UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KIMBERLY BARNES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:07-CV-297 CAN |
| | ) |
| LAPORTE COUNTY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

On June 27, 2007, Kimberly Barnes ("Barnes") filed her complaint in this Court against LaPorte County, Indiana ("the Auditor"). Barnes claims that the Auditor inappropriately terminated her employment in violation of the Family Medical Leave Act ("FMLA"). The Auditor responds that Barnes was terminated for failing to abide by the Auditor's leave policies. On September 18, 2008, upon the consent of the parties, this case was reassigned to the undersigned for all purposes. On December 2, 2008 through December 3, 2008, a two day bench trial was held before the undersigned. This Court now enters its ruling from those proceedings.

**I.  FACTUAL BACKGROUND**

In the summer of 2006, Barnes' position in the Auditor's office was reclassified by the Auditor to be commensurate in title and pay as her coworker, Sheryl Lestinsky ("Lestinsky"). In addition, on November 21, 2006, LaPorte County adopted a revised policy for employee's use of accrued Paid Time Off ("PTO") days, a benefit provided by LaPorte County. See Tr. Ex. 7. This policy change, which affected all LaPorte County employees, required that requests for use

of PTO be made directly to the employee's supervisor and required that compensatory time, another benefit of LaPorte County employment, be used prior to PTO time.[1]  Id.

Barnes was unhappy with both policy changes.  At trial, Barnes testified that she felt "insulted" that her job was reclassified as comparable to that of Lestinsky and testified that the PTO policy changes were "stressors."  Theresa Shuter ("Shuter"), Auditor for LaPorte County and Barnes' direct supervisor, testified that, following the policy changes, Barnes stopped talking with her and began missing work more frequently.  Barnes affirmed Shuter's testimony, adding that the Auditor's office, "wasn't a pleasant environment and its was affecting my health."

In addition to missing more days at work, Lestinsky testified that Barnes twice informed her that she was planning on leaving the Auditor's office, at the end of 2006 and in March of 2007, immediately preceding Barnes' extended leave.  Barnes testified that she "may" have told Lestinsky that she planned on leaving and acknowledged that she was seeking to transfer offices within LaPorte County.  Finally, Lestinsky testified that, prior to Barnes' scheduled vacation in March of 2006, Barnes cleaned out her desk of any personal belongings.

At the beginning of March, Barnes took a two week vacation.  On March 16, 2007, the last day of Barnes' vacation, Barnes sent a facsimile and a note from a doctor's office, signed by nurse practitioner Michael Beach, to the Auditor.  See Trial Ex. 12.  The note minimally stated that Barnes would need a medical absence through April 2, 2007.  Id.  Shuter, Barnes' supervisor, sent Barnes a letter which included an FMLA leave-request form.  See Trial Ex. 13.

---

[1] The parties testified that compensatory time is required by law to be paid to the employee upon termination.  In contrast, PTO time, as an independent benefit of LaPorte County, is not paid to LaPorte County employees who cease employment with LaPorte County.

The letter informed Barnes that her time off would be unpaid until the FMLA leave was verified. Id. Further, the letter warned Barnes that she would be subject to LaPorte County's attendance policies if her leave was determined to be not FMLA qualifying. Id. When Shuter later discovered that she had sent Barnes outdated FMLA forms, Shuter told Lestinsky to deliver to Barnes the newer FMLA forms. Lestinsky testified that, when she attempted to deliver the new forms to Barnes, Barnes told her that she would rather take PTO time for her leave.

Despite her statement to Lestinsky, on March 27, 2007, Barnes sent a completed WH-380 form to Shuter, which confirmed Barnes' need to be off from work through April 2, 2007 and specified that she was suffering from stress and insomnia.[2] See Trial Ex. 14. On March 28, 2007, Shuter, suspecting the leave to be fraudulent, sent a letter to Barnes which required Barnes to obtain a second medical opinion and scheduled a doctor's appointment on Barnes' behalf. See Trial Ex. 15. Barnes, however, did not attend the appointment. Instead, on April 2, 2007, Barnes submitted another note from nurse Beach, requesting further medical leave. See Trial Ex. 17. On April 12, 2007, Shuter sent a letter to Barnes, terminating Barnes' employment with the Auditor due to Barnes' "continued absence from work . . . without approval or excuse." See Trial Ex. 19.

II.   ANALYSIS

   A.   Applicable Law

The Family and Medical Leave Act of 1993 ("FMLA" or "the Act") establishes both prescriptive and proscriptive protections for eligible employees. The prescriptive category of protections ensures the availability of the FMLA's substantive statutory rights, making it

---

[2] On February 12, 2007, nurse practitioner, Michael Beach, had prescribed sleeping pills to treat Barnes' complaints of stress and insomnia. See Trial Ex. 8.

unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided. 29 U.S.C. § 2615(a)(1). The proscriptive category of protections does not ensure substantive rights, but instead, protects employees from retaliation, making it unlawful for employers to discriminate against eligible employees who have exercised their rights under the FMLA. 29 U.S.C. § 2615(a)(2). Barnes alleges that the Auditor violated both provisions. The Auditor contends that Barnes did not seek FMLA protections, failed to comply with the Act's requirement to submit to a second medical opinion, and violated the LaPorte County's attendance policies and procedures.

B. <u>Analysis</u>

1. <u>Barnes' Failed to Properly Certify Her Requested Leave and Thereby Forfeited Her Substantive Rights Under the FMLA</u>

The FMLA entitles eligible employees to take job protected leave from work if they are suffering from a serious health condition. The FMLA defines a serious health condition as "an illness, injury, impairment, or physical or mental condition that involves -- (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a heath care provider. 29 U.S.C. § 2611(11). To establish the existence of such a condition an employee must submit medical certification. 29 U.S.C. § 2613(a). If the employer doubts the sufficiency or veracity of the certification, the employer may require another opinion. 29 U.S.C. § 2613(c)(1); 29 C.F.R. § 825.307(a)(2). <u>See</u> <u>also</u> <u>Diaz v. Fort Wayne Foundry Corp.</u>, 131 F.3d 711, 713 (7th Cir. 1997).

The Auditor argues that, although Barnes submitted a WH-380 form in application of FMLA leave, Barnes forfeited her rights under the FMLA because she failed to attend a second medical appointment to certify her leave. In response, Barnes testified that, although she

4

received the Auditor's letter regarding the second appointment and understood that the Auditor had offered to pay the expenses, she did not believe that the Auditor had the money to pay for the appointment. On cross-examination, however, Barnes admitted that she did not attend the appointment because she felt that it was unjustified. The failure of Barnes to comply with her employer's request for a second medical opinion is fatal to her FMLA claim.

The FMLA provides that when an employer has reason to doubt the validity of a medical certification the employer may require the employee to obtain a second medical opinion at the employer's expense. 29 U.S.C. § 2613(c)(1); 29 C.F.R. § 825.307(a)(2). In addition, the Seventh Circuit has held that, "[a]n employee who fails to cooperate with the second-opinion process under 2613(c), loses the benefit of leave under 2612(a)(1)(C) or (D)." Diaz, 131 F.3d at 713. Barnes, however, argues that, under the statute, the purpose for seeking a second opinion is limited to verifying the certification. As such, Barnes contends that the Auditor, in seeking to obtain more information, overreached the statutory provision by requiring a second opinion for purposes other than verification of Barnes' certification. This Court does not agree.

Shuter testified that she had an "honest suspicion" that Barnes' application for FMLA leave was not legitimate. As such, the Auditor argues that its request for a second opinion did not violate Barnes' FMLA rights. Specifically, Shuter noted, as reasons for her suspicions: the frequency and timing of Barnes' absences; Barnes' known frustration regarding the change in PTO policy; Barnes' repeated statements to Lestinsky that she was leaving her position at the Auditor's office; and Barnes' efforts to clean out her desk prior to taking an extended leave of absence. Additionally, Barnes' testimony that she was never physically examined by a doctor for the condition which necessitated her leave, instead consulting over the telephone with nurse

5

practitioner, Michael Beach, bolster the Auditor's decision to request a second opinion. Finally, the vague leave requests, and curious timing, faxed to the auditor's office on the last day of Barnes' vacation, added to the Auditor's suspicious.

In light of this evidence, this Court concludes that the Auditor had an honest suspicion to justify its request for additional certification by an independent medical examiner. In Vail v. Raybestos Prods. Co., the Seventh Circuit noted, "an employer does not interfere with FMLA rights if it had an 'honest suspicion' that the employee was abusing her leave." Vail, 533 F.3d 904, 909 n1 (7th Cir. 2008). Accordingly, this Court concludes that the Auditor's request did not violate Barnes' substantive FMLA rights.

Further, this Court agrees with the Auditor, that Barnes' failure to attend the second opinion appointment to certify her leave worked to forfeit Barnes' substantive rights under the Act. As Diaz makes clear, "[a]n employee who fails to cooperate with the second-opinion process under 2613(c), loses the benefit of leave under 2612(a)(1)(C) or (D)." Diaz, 131 F.3d at 713. And because Barnes was not entitled to FMLA protection, the Auditor was entitled to apply the County's attendance policies. See 29 C.F.R. 825.302(d) ("An employer may . . . require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave."). See also Gilliam v. United Parcel Serv., 233 F.3d 969 (7th Cir. 2000) ("Nothing in the FMLA or the implementing regulations prevents an employer from enforcing a rule requiring employees on FMLA leave to keep the employer informed about the employee's plans.").

Although termination for unauthorized leave is a harsh penalty, it is provided for in the County's handbook and was within the discretion of the Auditor to impose. See Trial Ex. 2 at 44

6

("Absence from duty, without approval in accordance with these rules, for a period of three working days may be considered by the supervisor as cause for dismissal."). This Court will not second guess the legitimate exercise of supervisory authority.

### 2. The Auditor Did Not Deprive Barnes of Any Substantive FMLA Rights

Barnes additionally argues that the Auditor's handling of her FMLA application violated her substantive rights under the FMLA. Having already decided that Barnes failed to comply with the requirements of FMLA, and thereby forfeited her substantive rights, this Court does not need to entertain Barnes' claims any further. However, out of the interests of justice, this Court does address them and finds them both without merit.

First, Barnes argues that the Auditor failed to provide her with the required amount of time to certify her leave, giving her eight days rather than the full fifteen days permitted by the statute. See 29 C.F.R. § 825.305(b). In response, the Auditor notes that, because Barnes was able to comply within the shortened time period, any prejudicial interference with Barnes' FMLA rights is moot. This Court agrees that Barnes was not prejudiced by the shortened time period to certify her leave. In addition, this Court finds that Barnes has failed to show that the Auditor's actions were clearly deficient under the regulations, so as to have denied Barnes a substantive right under the Act.

Second, Barnes argues that the Auditor failed to provide her notice of the consequences of failing to properly certify her leave, as required by statute. See 29 C.F.R. §825.305(d) ("At the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification."). The Auditor responds that it informed Barnes of the consequences for failing to abide by the LaPorte

7

County's attendance provisions, should her leave not be FMLA qualifying, in a letter stating the same. See Trial Ex. 13. As such, the Auditor argues that Barnes was on notice, via statements in the employee handbook, that she was an employee at will and could be subject to termination for failing to attend work. See Trial Ex. 2 (Notice) ("All LaPorte County employees are considered employees-at-will."). See also Trial Ex. 3 (acknowledgment of receipt of employee handbook, signed by Barnes). Specifically, the Auditor cites language in the handbook that states, "[a]bsence from duty, without approval in accordance with these rules, for a period of three working days may be considered by the supervisor as cause for dismissal." See Trial Ex. 2 at 44.

This Court finds the Auditor's notification to be both prudent and reasonable. While it is true that Auditor's letter did not specifically mention termination as a consequence of Barnes' failure to attend the appointment, the letter did inform Barnes that her request for leave remained subject to LaPorte County's attendance policies, to the extent that FMLA did not apply. At trial, Barnes testified that she was both aware and understood her obligation to contact her direct supervisor regarding any PTO leave requests. See also Trial Ex. 7. ("If used as a sick day, the employee must call in to his supervisor after their respective office or department opens. . . . PTO days are a privilege and abuse of such time could subject the employee to disciplinary action."). Further, the Auditor submitted evidence that Barnes had received a copy of the employee handbook, in which termination for three days or more of unapproved absence was cause for dismissal. As such, this Court concludes that Barnes was on notice that, should her leave not qualify under the FMLA, termination was a possibility for her failure to abide by LaPorte County's attendance policies. Additionally, this Court finds hyper-technical the claim that the form of the Auditor's notice was sufficiently deficient to have worked an interference

8

with Barnes' substantive FMLA rights. Accordingly, for these reasons, this Court concludes that the Auditor did nothing to improperly interfere with Barnes' substantive rights under the FMLA.

        3.      <u>The Auditor Did Not Retaliate Against Barnes for Requesting FMLA Leave</u>

Finally, in her complaint, Barnes asserted a claim of unlawful retaliation under the FMLA. Specifically, Barnes argued that the Auditor's motivation for terminating her employment was primarily due to Barnes' exercise of FMLA leave. The Auditor refuted this assertion, responding that Barnes' termination was for absenteeism and non-compliance with LaPorte County notification procedures for requested leave. At trial, Barnes appeared to waive her retaliation claim, primarily asserting violations of substantive FMLA rights instead. Regardless, there is simply no evidence in the record that supports a finding that Barnes was terminated because of her attempts to qualify for FMLA leave.

It is unlawful for employers to use the taking of FMLA leave as a negative factor in employment actions and employers are forbidden from counting FMLA qualifying absences under no fault attendance policies. 29 C.F.R. § 825.220(c). At trial, Barnes testified that she did not initially seek FMLA leave, desiring to use PTO time instead. In contrast, Shuter testified that it was she who, out of prudence and concern for Barnes' rights, sent Barnes the paperwork to apply for FMLA leave. Lestinsky testified that, after it was determined that the improper FMLA forms had been sent to Barnes, Barnes told Lestinsky that she would rather take PTO time then seek the proper forms. Again, in contrast to Barnes' testimony, Shuter testified that she decided to resend Barnes the proper FMLA forms. Further, Shuter testified that, at all times, she was in communication with the city attorney and the U.S. Department of Labor for advice on

how to properly follow FMLA procedures in regards to Barnes' application for FMLA leave. Such evidence clearly shows that, not only did Shuter lack intent to retaliate against Barnes on account of Barnes' attempts to utilize FMLA leave, but also that it was Shuter who was conscientiously attempting to ensure that Barnes received any FMLA protection to which she was entitled.

Considering the totality of the evidence, this Court finds Shuter's testimony and explanations regarding Barnes' termination to be more credible. Both parties testified that a breakdown had occurred in the employer/employee relationship as a result of Barnes' ongoing frustration with the changes to LaPorte County's policies. Further, Barnes testified at trial that she was both aware of, and did not comply with, the requirement to request PTO time directly with her supervisor, choosing instead to communicate her leave requests with other persons in the Auditor's office. See e.g. Barnes' Second Leave Request, Tr. Ex. 10 (sent to Commissioner Bohacheck for the stated purpose of avoiding communication with Shuter). When Barnes' declined to certify her leave according to the procedures of the FMLA and failed to properly communicate her leave according to LaPorte County's leave policy, the Auditor was within its discretion to discipline Barnes according to the LaPorte County handbook. See Trial Ex. 2 at 44; Trial Ex. 7; Trial Ex. 22.

Accordingly, this Court concludes that the Auditor did not retaliate against Barnes for attempting to take FMLA leave, but, instead, terminated Barnes' employment solely on the basis of Barnes' frequent absenteeism and failure to communicate PTO leave requests directly to her supervisor, as required by LaPorte County's leave policies.

**III.    CONCLUSION**

For the aforementioned reason, the Court **FINDS FOR** the Auditor and **AGAINST** Barnes, and directs the Clerk to enter judgment for the Defendants.

**SO ORDERED.**

Dated this 16th Day of December, 2008.

S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge
